UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY MCCORVEY, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| SPOT EDGE TRUCKING, INC., SPOTTER LEASING, LLC, and KORA FREIGHT, INC., | ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 1:23-cv-15791

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**INTRODUCTION**

1. This is an action brought on behalf of current and former delivery drivers challenging Defendants Spot Edge Trucking, Inc., ("Spot Edge Trucking"), Spotter Leasing, LLC ("Spotter Leasing"), and Kora Freight Inc's. ("Kora Freight") (collectively "Defendants") unlawful practices. Plaintiff Terry McCorvey ("Plaintiff") challenges Defendants' unlawful practice of making deductions from delivery drivers' wages and failing to pay drivers all wages due. Plaintiff contends that, although he and other delivery drivers were classified by Spot Edge Trucking as independent contractors, they were, in fact employees of Spot Edge Trucking.

2. Plaintiff Terry McCorvey brings this case as a class action under Fed. R. Civ. P. 23 on behalf of all current and former delivery drivers who provided delivery services for Spot Edge Trucking between November 8, 2013, and the present. Plaintiff alleges that, as a result of Defendants' policies, illegal deductions were made from his and the class members' wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat.

1

115/9. Plaintiff also contends that Defendants unlawfully required him and others similarly situated to incur expenses that should have properly been borne by Defendants in violation of 820 Ill. Comp. Stat. 115/9.5.

3. Plaintiff also brings this case as a collective action pursuant to 29 U.S.C. §216(b) on behalf of all current and former delivery drivers who provided delivery services for Spot Edge Trucking between November 8, 2020 and the present. Plaintiff alleges that, as a result of Defendants' policies, he and other delivery drivers did not receive minimum wage compensation for all hours worked as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*

## PARTIES

4. Defendant Spot Edge Trucking, Inc. ("Spot Edge Trucking") is headquartered in Woodridge, Illinois. Spot Edge Trucking does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

5. Defendant Spotter Leasing, LLC ("Spotter Leasing") is headquartered in Woodridge, Illinois. Spotter Leasing does business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

6. Defendant Kora Freight, Inc. is headquartered in Lemont, Illinois. Kora Freight does business in Illinois and operates facilities in Illinois.

7. Defendants jointly and severally are subject to the provisions of the IWPCA and are "employers" within the meaning of that statute.

8. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-7.

9. Defendants' annual gross volume of sales made or business done exceeds $500,000.

10. Plaintiff Terry McCorvey is a citizen of California. McCorvey provided delivery services for Spot Edge Trucking in the State of Illinois as a delivery driver from approximately September 2023 to October 2023. During this time, McCorvey was classified as an independent contractor.

## JURISDICTION AND VENUE

11. This Court has federal question jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. §216(b).

12. This Court has supplemental jurisdiction over Plaintiff's IWPCA claims under 28 U.S.C. § 1367 because these claims are so related to the claims over which this Court possesses original jurisdiction that it forms part of the same case or controversy under Article III of the Constitution.

13. The Court has personal jurisdiction over Defendants because Defendants are registered with the Illinois Secretary of State, Defendants do business in the State of Illinois, and Defendants have expressly consented to personal jurisdiction in the State of Illinois and this judicial district.

14. The Court has personal jurisdiction over Plaintiff and the putative class members because they have worked in Illinois for an Illinois employer.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

## FACTUAL BACKGROUND

**Facts relating to the Defendants**

16. Plaintiff was hired by Spot Edge Trucking to perform deliveries in Illinois and across the United States.

17. Prior to beginning to work for Spot Edge Trucking, Plaintiff came to Spot Edge Trucking's Illinois office to fill out paperwork, and came to the adjoining yard to pick up his truck.

18. Plaintiff was required to sign an independent contractor agreement in order to work as a delivery driver for Spot Edge Trucking.

19. Plaintiff was also required to sign a truck rental agreement with Spot Edge Trucking and Spotter Leasing.

20. Spot Edge Trucking and Spotter Leasing share the same address of 7501 Lemont Road, Woodridge, Illinois.

21. Upon beginning work for Spot Edge Trucking, Plaintiff received a printout listing names and contact information for various employees at Kora Freight, Inc., including dispatch, safety, and human resources. Upon information and belief, these employees are shared between Kora Freight, and Spot Edge Trucking.

22. Kora Freight's website states that "[w]ith over 10 years in business, we have built strong relationships with our drivers and brokers alike. This has given us a competitive edge in rates and lanes that we move."[1] The website also prominently advertises job openings for drivers.

23. Spot Edge Trucking's website states that "[w]ith strong broker relationships, we are able to leverage the best loads for our drivers. We have a seasoned operations team and the

---

[1] https://www.kora-freight.com (last visited November 3, 2023).

best CDL A operators in the country."[2] The website also prominently advertises job openings for drivers.

24. Plaintiff drove a truck which said "Kora Freight, Inc. operated by Spot Edge Trucking, Inc." and had Spot Edge Trucking, Inc's Motor Carrier Authority and DOT Number on it.

25. Plaintiff received his pay statements from Spot Edge Trucking.

**Plaintiff's Work for Defendants**

26. Plaintiff worked for Defendants full time, up to 70 hours a week. He did not work anywhere else while working for Spot Edge Trucking.

27. Plaintiff was required to regularly check in with Spot Edge Trucking and Kora Freight's dispatchers and to follow their instructions as to which loads to haul, and where and when to pick up these loads. Plaintiff received regular messages from the dispatchers asking about his progress on making the deliveries.

28. Plaintiff was assigned loads which he had to pick up and/or drop off in Illinois.

29. Plaintiff was also required to comply with Defendants' other instructions with regard to driving, fueling and maintaining the truck, safety, and other matters.

30. Plaintiff was supposed to be paid on a percentage-of-the-load basis for the deliveries he made.

31. Throughout the course of Plaintiff's employment, Defendants made deductions from Plaintiff's pay, which came to thousands of dollars per week. Plaintiff did not authorize these deductions.

32. These included deductions for truck rental, fuel, tolls, cleaning, maintenance support, ELD support, escrow, insurance, and truck cleaning.

---

[2] https://www.spotedgetrucking.com (last visited November 3, 2023).

5

33. As a result of the deductions taken out of Plaintiff's pay, Plaintiff was not paid *any* compensation by Spot Edge Trucking. In fact, his final pay statement said that he owed approximately $600 to Spot Edge trucking. As a result, during Plaintiff's time working for Defendants, he was not paid minimum wage. Upon information and belief, other delivery drivers who worked for Spot Edge Trucking likewise did not receive any compensation.

34. In addition, Defendants failed to reimburse Plaintiff for out-of-pocket expenses he incurred in order to perform his duties, including cell phone payments and GPS, among others.

35. Defendants exercised extensive control over the Plaintiff's and other similarly situated drivers' work, including the number of hours worked, the distance driven, and the deliveries performed by Plaintiff and other similarly situated truck drivers.

36. Defendants controlled every aspect of their drivers', including Plaintiff's, work. Such control included, but was not limited to the following:

   a. Defendants required Plaintiff and other similarly situated drivers to comply with instructions dictated by written and unwritten policies, procedures, and directives regarding Plaintiff's and other similarly situated drivers' duties.

   b. Plaintiff, as well as other similarly situated drivers, were required to report to or contact dispatchers employed by Defendants at multiple points throughout the day.

   c. Plaintiff and other similarly situated drivers were provided with daily delivery assignments. Delivery drivers did not have the ability to turn down the loads assigned to them by Defendants.

   d. Defendants' employees instructed Plaintiff and other similarly situated drivers which loads to pick up, the location of the loads/goods to be delivered, as well as the time frames for loading onto the equipment. Plaintiff and other similarly situated drivers had and have no discretion with respect to which loads they would

6

pick up or deliver or when. Additionally, Defendants dictated the time by which each delivery must be made.

e. Defendants' dispatchers and supervisors also communicated with Plaintiff and similarly situated drivers while they were driving via telephone and electronic message in order to convey instructions and otherwise oversee the drivers, and tracked the drivers' location via GPS.

f. Defendants required Plaintiff and other similarly situated drivers to undergo background checks and drug testing prior to beginning work.

g. If Plaintiff or other similarly situated drivers wished to take time off, Defendants required them to give timely advance notice, with the Plaintiff and other similarly situated drivers disciplined or terminated for failure to provide such notice.

h. Defendants required Plaintiff and other delivery drivers to submit all bills of lading, logbooks, and other required paperwork on a weekly basis.

37. At no time during their employment were Plaintiff and other similarly situated drivers allowed to have their own customers nor did they ever have their own customers.

38. Further, Plaintiff and other delivery drivers could not choose and did not choose their own routes for delivery of cargo, could not and did not receive compensation or otherwise exchanged payment for their delivery other than being compensated by Spot Edge Trucking and could not and did not negotiate any matters or bargains with any customers or brokers.

39. Plaintiff and other similarly situated truck drivers shared similar job titles, followed the same policies and practices, performed similar duties, and as a result of Defendants' common scheme of misclassification and applications of unlawful deductions, were similarly denied compensation in violation of the FLSA and the IWPCA.

7

**CLASS ACTION ALLEGATIONS**

40. Plaintiff bring Counts I and II this lawsuit against Defendants as a class action pursuant to Fed. R. Civ. P. 23 class action for and on behalf of the following classes, for which Plaintiff seeks certification:

   a. For the IWPCA deductions claim (Count I), all current and former delivery drivers who, either on behalf of themselves or a corporate entity, signed an agreement with Spot Edge Trucking and provided delivery services for Spot Edge Trucking in the State of Illinois between November 8, 2013 and the present.

   b. For the IWPCA expenses claim (count II) all current and former delivery drivers who, either on behalf of themselves or a corporate entity, signed an agreement with Spot Edge Trucking and provided delivery services for Spot Edge Trucking in the State of Illinois between January 1, 2019 and the present.

41. This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

42. The class is so numerous that joinder of all potential class members is impracticable. On information and belief, the class is comprised of more than two hundred drivers.

43. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendants have misclassified drivers as independent contractors; whether Defendants have failed to pay drivers promised wages; and whether Defendants have taken unlawful deductions from drivers' wages and forced drivers to incur expenses which should have properly been borne by Defendants.

44. The class claims asserted by Plaintiff are typical of the claims of potential class members. Defendants operate in a highly regulated industry that requires them to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and

regulations governing motor carriers. Plaintiff's and class members' claims for unpaid wages and unlawful deductions should be readily calculable from Defendants' business records.

45. Plaintiff will fairly and adequately protect and represent the interests of the class. Their interest in challenging the unlawful practices of Defendants motivates him to bring this case as a class action.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants. Moreover, some class members particularly current drivers may be reluctant to bring their claims individually for fear of retaliation by Defendants.

47. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the IWPCA to drivers, whose individual claims may be too small to warrant the expense of litigation.

48. This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

49. The contours of the class will be easily defined by reference to business records kept by Defendants.

**COLLECTIVE ACTION ALLEGATIONS**

50. Plaintiff brings Count III of this lawsuit as a collective action on behalf of all individuals who worked as delivery drivers for Spot Edge Trucking between November 8, 2020

and the present and who may choose to opt-in to this case.

51. Plaintiff's FLSA claims should proceed as a collective action on behalf of all similarly situated individuals who worked as delivery drivers for Spot Edge Trucking during the past three years.

52. All potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Defendants did not pay drivers at least the minimum wage for all hours worked, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## COUNT I
## ILLINOIS WAGE PAYMENT AND COLLECTION ACT - DEDUCTIONS

53. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

54. At all relevant times, Plaintiff and the proposed class members were "employees" of Defendants as defined by the IWPCA.

55. At all relevant times, Defendants were employers of Plaintiff and the proposed class as defined by the IWPCA.

56. The IWPCA, 820 Ill. Comp. Stat. 115/9, prohibits employers from making deductions from employees' wages.

57. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by making unlawful deductions from Plaintiff's and the proposed class members' wages.

58. Plaintiff and the proposed class members seek reimbursement for all unlawful deductions taken by Defendants from their wages.

## COUNT II
## ILLINOIS WAGE PAYMENT AND COLLECTION ACT - EXPENSES

59. Plaintiff re-alleges and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

60. At all relevant times, Plaintiff and the proposed class members were "employees" of Defendants as defined by the IWPCA.

61. At all relevant times, Defendants were employers of Plaintiff and the proposed class as defined by the IWPCA

62. Defendants violated Section 115/9.5 of the IWPCA by failing to reimburse Plaintiff and other class members who worked for it since January 1, 2019 for expenditures they incurred related to services performed for the Defendants from January 1, 2019 to the present.

63. Plaintiff and the proposed class members seek all reimbursement for all unlawful expenses they were forced to incur as part of their work for Defendants.

## COUNT III
## FAIR LABOR STANDARDS ACT CLAIMS

64. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

65. After accounting for the deductions made from their pay and the expenses Plaintiff and the putative collective members paid that were necessary to perform their job, Defendants failed to pay Plaintiff and the members of the putative collective an hourly rate of at least the federal minimum wage of $7.25 per hour as required by the FLSA, 29 U.S.C. § 206(a).

66. Defendants' conduct in failing to ensure that its delivery drivers, with whom it has relied upon to perform a critical and integral component of their business services, receive the federal minimum wage, after accounting for the expenses they paid that were necessary to perform their job, was knowing, willful, intentional, and done in bad faith.

67. This claim is brought on behalf of a group of similarly situated individuals who may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## PRAYER FOR RELIEF

Plaintiff respectfully request that this Court grant the following relief:

A. Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

B. Appointing Plaintiff Terry McCorvey as a class representative and his counsel as class counsel;

C. An order enjoining Defendants from violating the IWPCA;

D. All unpaid wages;

E. Liquidated damages under the FLSA;

F. Restitution for all deductions taken from Plaintiff's and class members' wages;

G. Restitution for all Defendants' operating expenses that Plaintiff and class members were forced to bear;

H. An award to Plaintiff and the Rule 23 class of damages, statutory damages and penalties pursuant to the formula set forth in 820 Ill. Comp. Stat.115/14(a);

I. Pre-and post-judgment interest;

J. Attorneys' fees and costs, pursuant to the FLSA, and IWPCA; and

K. Any other relief as this Court deems just and proper.

DATED:  November 8, 2023    Respectfully Submitted,

TERRY MCCORVEY, individually and on behalf of all others similarly situated,

By his attorneys,

/s/ Bradley Manewith

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

Harold L. Lichten (*pro hac vice anticipated*)
Olena Savytska (*pro hac vice anticipated*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com